UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

ROBERT GLENN, JR., )
                              )
       Petitioner, )   Civil Action No. 0:11-CV-074-HRW
                              )
V. )
                              )   **MEMORANDUM OPINION**
J. C. HOLLAND, Warden, )          **AND**
                              )             **ORDER**
       Respondent. )

\*\* \*\* \*\* \*\* \*\*

Robert Glenn, Jr., an individual currently incarcerated in the Federal Prison Camp in Ashland, Kentucky ("FCI-Ashland"), has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and has paid the district court's habeas filing fee.

The Petition is before the Court for screening. 28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, at \*1 (6th Cir. 2002). During screening, the allegations are taken as true and liberally construed in the *pro se* Petitioner's favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, the Court may dismiss the Petition at any time, or make any such disposition as law and justice require, if it determines that the Petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

In this action, Glenn challenges the manner in which the Bureau of Prisons ("BOP") considered his request for an additional six months' placement in a Residential Reentry Center ("RRC"), a placement to which he asserts he is entitled on the grounds of compassionate release in order to regain custody of his two minor children who are in custody of the Kentucky Cabinet for Health and Family Services ("KCHFS"). Essentially, Glenn claims that the BOP failed to effectively respond to this request. Because it appears from his habeas corpus petition and attachments thereto that he is not entitled to a writ of habeas corpus, 28 U.S.C. § 2243, his petition will be denied, and this action will be dismissed.

## BACKGROUND

Glenn is currently serving a 72-month sentence, imposed on February 22, 2008, for possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). His projected release date is August 6, 2012, and he has been approved for transfer to an RRC on February 19, 2012, 170 days before his release date, nearly a six-month period of time.

After Glenn was notified that he had been approved for transfer to an RRC, effective on February 19, 2012, he asked his case manager to request that he be

reevaluated and approved for transfer to an RRC for an *additional* six months.[1] This request was based on Glenn's belief that he needed additional time in an RRC so that he could regain custody of his two minor children as soon as possible and remove them from foster care.[2] BOP personnel reviewed Glenn's request and advised him that his being granted additional time in an RRC would not enable him to regain custody of his children any sooner, since while he was residing in an RRC, he would still be in custody of the BOP, and that so long as he was in BOP custody, he would be unable to regain custody of his two children. Consequently, both Glenn's case worker and his counselor agreed that there was no need to review Glenn's case to be submitted for approval for additional time in an RRC.

On March 3, 2011, Glenn submitted Administrative Remedy No. 629885-F2 to Warden Holland, requesting to be reevaluated for an additional six months' placement in an RRC on the grounds that he needed this additional time in order to

---

[1] Since Glenn's projected release date is August 6, 2012, and since the BOP has authorized his placement in an RRC as of February 19, 2012, the Court presumes that by Glenn's request for an *additional* six months' placement in an RRC, he is seeking to be placed in an RRC on or about August 19, 2011, six months prior to his current authorized date, February 19, 2012.

[2] Apparently, Glenn's conviction and incarceration resulted in the KCHFS placing his children in foster care. For reasons unknown to the Court, Glenn is of the opinion that unless he regains custody of his children soon, the KCHFS may seek to terminate his parental rights and place his children for adoption.

regain custody of his two minor children who are in foster care. On March 31, 2011, Warden Holland denied his request for the following reasons:

> Your Unit Team evaluated you for RRC placement on December 22, 2010. Your case was reviewed in accordance with the Second Chance Act of 2007, in accordance with BOP Program Statement, 7310.04, Community Corrections Center (CCC) Utilization and Transfer Procedures, dated December 16, 1998, as well as, the following five factor criteria from 18 U.S.C. 3621(b): (1) The resources of the facility contemplated; (2) The nature and circumstances of the offense; (3) The history and character of the prisoner; (4) Any statement by the court that imposed the sentence: (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or recommending a type of penal or imprisonment was determined to be warranted; or recommending a type of penal or correctional facility; and (5) Any pertinent policy statement issued by the U.S. Sentencing Commission. Additionally, RRC placement decisions are made "of sufficient duration" to provide the greatest likelihood of successful reintegration into the community.
>
> Your concerns and all available information were considered in making a decision regarding your RRC placement. Unit Staff believe that your RRC placement of 170 days should be more than sufficient for you to make a successful reintegration back into the community.
>
> Based on this information, your request for remedy is denied. . . .

See Habeas Petition [DE #2], Attachment 4 [Doc. #2-4].

Glenn exhausted his administrative remedies. On July 13, 2011, Harrell Watts, Administrator, National Inmate Appeals, affirmed the Warden's decision and denied Glenn's appeal, stating as follows:

4

> Your unit team determined that an RRC placement duration of 170 days was appropriate for your transitional needs. The recommendation was forwarded to the respective Community Corrections Manager who makes the final decision as to the community program or placement length. You may submit a request to your unit team for a further explanation regarding your RRC recommendation. You have a projected release date of August 6, 2012, and have been approved for transfer to an RRC on February 19, 2012. We find that your RRC placement needs were assessed by the unit team in a manner consistent with the requirements of the Second Chance Act of 2007, Public Law 110-199, and 28 C.F.R. Part 570. Placement for an additional period is not warranted.

See <u>Central Office Response to Administrative Remedy Appeal</u> - Administrative Remedy No. 629885-A1 (DE #4-1).

## DISCUSSION/ANALYSIS

### The "Second Chance Act of 2007"

The Second Chance Act amends 18 U.S.C. §§ 3621(a) and 3624(c) and requires BOP staff to review inmates for halfway house placement 17-19 months before their projected release dates.

The purposes of the Second Chance Act are, in part, to break the cycle of criminal recidivism; to rebuild ties between offenders and their families; to encourage the development and support of programs that enhance public safety and reduce recidivism, such as substance abuse treatment, alternatives to incarceration and comprehensive reentry services; to protect the public and

5

promote law-abiding conduct; to assist offenders reentering the community from incarceration; and to provide offenders in prisons . . . with educational, literacy, vocational, and job placement services to facilitate re-entry into the community. *See* Act, 112 Stat 657. The Second Chance Act requires the BOP to "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c).

A portion of the Second Chance Act concerns the Federal Prisoner Reentry Initiative. Section 231 requires the BOP to establish a federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community. *See* Section 231 of the Second Chance Act. BOP staff is required to (a) assess each prisoner's skill level; (b) generate a skills development plan; (c) determine program assignments for prisoners; (d) ensure that priority is given to the reentry needs of high risk populations; (e) coordinate and collaborate with local criminal justice agencies and organizations to help effectuate a seamless reintegration into the communities; (f) collect information about a prisoner's relationships and to help prisoners maintain important familial relationships after

6

release from custody; and (g) provide incentives for prisoner participation in skills development programs. *Id.* at (a).

On April 9, 2008, Congress amended the Second Chance Act. In part, this amendment enlarged the maximum duration of RRC placement up to twelve (12) months. Inmates are considered on an individual basis for pre-release community confinement in a manner consistent with the criteria established at 18 U.S.C. § 3621(b). However, this amendment does not automatically entitle an inmate either to RRC placement or placement of a particular duration.

Glenn seems to be of the mistaken impression that with the amendment of the Second Chance Act to provide for a maximum of twelve months' placement in an RRC, he is statutorily entitled to be placed in an RRC for twelve months in advance of his release date. While the statute does provide for placement in an RRC for up to twelve months, that does not mean that all inmates who are eligible for RRC placement *must* be placed in an RRC for twelve months prior to their release from custody and that failure to do so is a violation of the statute. On the contrary, there is no automatic entitlement to RRC placement for any length of time.

Glenn's placement in an RRC for an additional six months would not shorten the time in which he would be able to regain custody of his children. As

7

BOP personnel correctly pointed out to him, while residing in an RRC, he would still be in custody of the BOP, and as long as he is in BOP custody, he will be unable to regain custody of his two children. Thus, Glenn's placement in an RRC earlier than his current approved date, February 19, 2012, will be of no assistance to him in regaining custody of his two minor children. For this reason, his habeas petition is without merit.

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) Robert Glenn, Jr.'s Petition for Writ of Habeas Corpus is **DENIED**;

(2) this action will be **DISMISSED** from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent, J. C. Holland, Warden.

This 3rd day of November, 2011.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge